UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

REBECCA S. CRAPPELL                                      CIVIL ACTION
INDIVIDUALLY AND AS
ADMINISTRATRIX OF THE ESTATE
OF HER DECEASED HUSBAND
ADAM CRAPPELL

VERSUS                                                   NO: 06-1315
                                                         C/W 06-1994
                                                         Ref: 06-1994

BOH BROS. CONSTRUCTION CO.,                              SECTION: "A" (1)
LLC AND STANDARD CONCRETE
PRODUCTS, INC.

### ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 444)** filed by Defendant, National Ventures, Inc. ("National"). Plaintiffs, Boh Bros. Construction Co., L.L.C., and its subrogated insurer, Westport Insurance Corporation (collectively "Boh"), and Defendant, Standard Concrete Products, Inc. ("Standard"), oppose the motion. The motion, set for hearing on September 15, 2010, is before the Court on the briefs. For the reasons that follow, the **Motion for Summary Judgment (Rec. Doc. 444)** is **DENIED**.

### I. BACKGROUND

This matter arises out of a construction accident near Ft. Meyers, Florida during the construction of the Sanibel Causeway in Lee County. Jacobs Construction Services, Inc. employed Boh as a subcontractor to construct the Causeway connecting Ft. Myers, Florida to Sanibel Island in Lee County, Florida. (Boh's Mem. Opp'n to National's Mot. Summ. J. 2, 8.) Boh subsequently contracted with Standard to manufacture and supply the project with pre-cast concrete piles. (*Id.*

1

at 2, 11.) Boh also contracted with National to manufacture and supply 30" Sure-Lock splices to Standard. (*Id.* at 2-3, 8.) The component parts of the 30" Sure-Lock splice, including the splice plate and rebar rods, were shipped to Standard by various vendors hired by National. (Standard's Mem. Opp'n to National's Mot. Summ. J. 2.) Standard was responsible for assembling National's 30" Sure-Lock splices into the piles that Standard manufactured for Boh. (Boh's Mem. Opp'n to National's Mot. Summ. J. 2-3.) Standard alleges that National provided no instructions or drawings specifying the minimum thread engagement for the 30" Sure-Lock splices. (Standard's Mem. Opp'n to National's Mot. Summ. J. 8-9.) Standard further asserts that it had difficulty screwing the rebar rods into the splice assembly and notified National of this problem on multiple occasions. (*Id.* at 5.)

On April 25, 2005, Boh was conducting pile-driving operations from a crane barge when the precast splice pile failed. (Standard's Mem. Opp'n to National's Mot. Summ. J. 2.) The accident resulted in the death of the crane operator and physical damage to Boh's vessels and equipment. (Boh's Mem. Opp'n to National's Mot. Summ. J. 1.) The family of the crane operator filed a wrongful death claim against Standard and Boh, which was settled. (National's Mem. Supp. Mot. Summ. J. 2.) Boh also filed a property damage lawsuit against Standard, alleging that the manufactured concrete piles were defective. (*Id.*) Standard answered the suit and filed a Third Party Complaint against National, alleging that National's 30" Sure-Lock Splices were defective. (*Id.*) Boh then amended its Complaint to include National as a defendant. (*Id.*)

National filed the instant motion for summary judgment seeking dismissal of all the claims asserted by Standard and Boh on the grounds that there is no evidence of a product defect in the 30" Sure-Lock splices supplied by National. (*Id.* at 3.) National argues that the pile failure was caused

by either inadequate incorporation of the splice plate into the pile by Standard or by improper driving of the pile by the crane operator. (*Id.*) Standard opposes the motion, arguing that significant questions of material fact exist regarding National's failure to provide instructions to Standard on the proper fabrication of the 30" Sure-Lock splices and National's failure to supply component parts within specifications. (Standard's Mem. Opp'n to National's Mot. Summ. J. 1-2.) Boh also opposes the motion, arguing that genuine issues of material exist regarding whether National's splice was defective given that it lacked adequate instructions or warnings concerning the thread engagement of the rebar rods into the splice plate. (Boh's Mem. Opp'n to National's Mot. Summ. J. 2.)

## II. STANDARD OF REVIEW

Summary Judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (1993)).

### III. DISCUSSION

In accord with Rule 56 of the Federal Rules of Civil Procedure, genuine issues of material fact exist, precluding the granting of summary judgment. Primarily, issues of material fact exist concerning what party is at fault for the accident. Standard has adduced sufficient evidence to show that National may be responsible for the pile failure. Standard's engineer and metallurgical expert, Frank Grate, has opined that the pile splice failed because the threads in the splice plate supplied by National were out of specification. (Standard's Mem. Opp'n to National's Mot. Summ. J. 7-8.) Based on the evidence presented by Standard, if manufactured properly, the rebar rods should have threaded easily into the plates without using much force. (Lockie Dep. 189:13-18, Mar. 29, 2007.) In the instant case, Standard has demonstrated that it encountered difficulty in screwing the rebar rods into the 30" Sure-Lock splice plate assembly and had to use a cheater bar in screwing the rebar rods into the plate. (Standard's Mem. Opp'n to National's Mot. Summ. J. 5.) Standard also informed National on multiple occasions of its difficulty in screwing the rebar rods into the splice plate. (*Id.*) In responding to these inquiries, National admitted that the threads may have been mismatched and that its suppliers may not have constructed the threads correctly. (Podoll Dep. 44-45 Nov. 4, 2008; Lockie Dep. 203:17-23.) Moreover, Standard did not encounter difficulty screwing in a subsequent delivery of rebar rods and plates from National. (Standard's Mem. Opp'n to National's Mot. Summ. J. 6.) Also, Boh's metallurgical expert, Dr. Thomas Shelton, was unable to rule out whether the difficulty in threading the rebar rods into the plate was due to the dimensions of the threads. (Dr. Thomas Shelton Report 15.) Furthermore, National had received complaints in the past from pile manufactures concerning problems with the rebar rods. (Lockie Dep. 129:20-22.) Given that there was a noticeable difference in Standards's ability to screw the rebar rods into

the splice plate after the new shipment of component parts, issues of material fact exist as to whether the initial delivery of rebar rods and splice plates conformed to the project specifications.

Furthermore, Standard and Boh have offered evidence that National's failure to supply adequate instructions for assembly of the 30" Sure-Lock splice contributed to the accident. (Standard's Mem. Opp'n to National's Mot. Summ. J. 5-11; 12-13.) National readily admits that the 30" Sure-Lock splice did not include written directions for the thread engagement and acknowledges that Standard requested written instructions for fabrication of the pile. (Lockie Dep. 33:18-22; 220:12-20.) National's representative and draftsman, Glenn Lockie, also conceded that it is good drafting and good engineering practice to include critical dimensions on drawings submitted to a manufacturer. (*Id.* at 273:13-20.) Although National argues that Standard did not rely on the drawings in constructing the pilings, the Court finds that the record is unclear as to whether Standard's laborers relied on the drawings provided by National in fabricating the piles. Juan Hernandez, Standard's fabrication foreman, testified that it was customary to receive blueprints and instructions from National and that Mr. Hernandez would rely on these drawings for the number of rebar rods used, the type of rebar rods used, and the order the rebar rods were to be inserted. (Hernandez Dep. 37:9-14, 86:12-16 June 3, 2010.) Even though Mr. Hernandez testified that Standard did not provide any instructions on how to assemble the 30" Sure-Lock splice, it is unclear whether Mr. Hernandez received blueprints and instructions from National on how to construct the Sure-Lock splice. Furthermore, Mr. Hernandez identified the blueprints for the 30" Sure-Lock splice as the type of document that he had worked with in the past. (*Id.* at 39:1-3.) Therefore, the Court finds that issues of fact exist as to whether Mr. Hernandez relied on National's drawings in fabricating the splice plates. Thus, the adequacy of National's instructions present a question of fact

to be decided at trial.  Moreover, additional evidence needs to be presented to determine whether National's instructions contributed to pile failure given that the cause of the pile failure still remains unknown.

Conversely, Boh and National have presented sufficient evidence to allow a trier of fact to conclude that Standard may have caused the pile failure.  (National's Mem. Supp. Mot. Summ. J. 11-13.)  Boh's metallurgical expert, Dr. Thomas Shelton, has opined that the pile failed because there was insufficient thread engagement of the rebar rods into the splice plate and that Standard failed to fabricate the pile properly by not screwing the rebar rods fully into the splice plate. (National's Mem. Supp. Mot. Summ. J. 11-13.) Notwithstanding the fault attributed to Standard and National, Standard's crane expert, Richard Girdley, also has opined that Boh was at fault for the pile failure because the initial piling was driven crooked, resulting in a side load being imparted on the piling that far exceeded the design capability.  (National's Mem. Supp. Mot. Summ. J. 16.)  Given that Standard or Boh may have caused the pile failure, genuine issues of material fact exist as to the cause of the pile failure.

Because the parties have offered conflicting expert testimony, questions of material fact remain.  The weight given to the contradictory expert opinions is based on an assessment of credibility, which is allocated to the trier of fact at trial.  *See Simpson v. James*, 903 F.2d 372, 377 (5th Cir. 1990); *Lascola v. Schindler Elevator Corp.*, No. 08-4802, 2010 WL 971792, at *3 (E.D. La. Mar. 12, 2010) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); 1 Moore's Federal Practice, § 56.14 (3d ed. Mathew Bender 2009)).  As a result, National is not entitled to summary judgment given that credibility determinations are reserved for trial.

## IV. CONCLUSION

In conclusion, the Court finds that issues of material fact exist regarding the cause of the pile failure, the adequacy of National's instructions, and whether Standard relied on National's drawings in constructing the pile.

Accordingly, and for the foregoing reasons;

**IT IS HEREBY ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 444)** filed by Defendant, National Ventures, Inc. is **DENIED**.

This 21st day of December, 2010.

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE